**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN COLIN SUTTLES, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MUTUAL OF OMAHA INSURANCE COMPANY, a Nebraska insurance company, and SUTHERLAND GLOBAL SERVICES INC., a New York corporation,<br><br>*Defendants*. | Case No. 6:16-cv-06345<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff John Colin Suttles ("Plaintiff" or "Suttles") brings this Class Action Complaint and Demand for Jury Trial against Defendants Sutherland Global Services Inc. ("Sutherland") and Mutual of Omaha Insurance Company ("Omaha") (collectively, "Defendants") to stop their practice of placing unauthorized calls to the telephones of consumers nationwide and to obtain redress for all persons injured by their conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant Sutherland is one of the world's largest providers of business process and technology management services. Working across multiple industries with clients like Defendant Omaha, Sutherland offers a variety of consumer-facing services such as sales, marketing, customer service, and customer acquisition.

2. Sutherland provides many of these services over the phone, including through outbound calling campaigns. Unfortunately, to cut costs for these campaigns, it routinely uses

computers that have the capacity to indiscriminately machine-dial telephone numbers, in bulk, directly from stored lists and without active human intervention.

3. As a result, Sutherland routinely ends up machine-dialing consumers—including cellphone users—who never consented to receive such calls and who often pay out of their own pockets to receive them. Moreover, Sutherland often calls consumers who have placed themselves on the national Do-Not-Call Registry ("DNCR") expressly to avoid such calls.

4. By making these types of calls, Defendants violated and continue to violate numerous provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), which was enacted to protect consumers from exactly this type of behavior. Defendants' violations caused Plaintiff and the members of the Classes (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that accompanies the receipt of unwanted telephone calls as well as the costs incurred to receive them.

5. In response to Defendants' unlawful conduct, Plaintiff brings the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited phone call activities as well as an award of statutory damages to himself and the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

6. Plaintiff John Colin Suttles is a natural person and citizen of the State of Texas.

7. Defendant Sutherland Global Services, Inc. is a corporation incorporated and existing under the laws of the State of New York with its principal place of business located at 1160 Pittsford Victor Road, Pittsford, New York 14534. It conducts business throughout this District, the State of New York, and the United States.

8. Defendant Mutual of Omaha Insurance Company is an insurance company

organized and existing under the laws of the State of Nebraska with its principal place of business located at Mutual of Omaha Plaza, Omaha, Nebraska 68175. It conducts business throughout this District, the State of New York, and the United States.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendants because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Sutherland is headquartered here and conducts significant business within this District. Defendant Mutual of Omaha likewise maintains two offices within this District and conducts significant amounts of business transactions in this District. Further, the wrongful conduct giving rise to this case was directed from and/or emanated from Defendants' conduct in this District.

## COMMON FACTUAL ALLEGATIONS

*Sutherland Places Telemarketing Calls Without Consent*

11. Sutherland is a business process operations vendor that, among other things, provides marketing and customer acquisition services. As part of these services, Sutherland routinely conducts telemarketing campaigns on behalf of its clients, including Defendant Omaha.

12. To efficiently place calls on a large scale, Sutherland utilizes an automatic telephone dialing system ("ATDS") that has the capacity to store telephone numbers in its system and to dial numbers from a list, *en masse*, without human intervention.

13. Sutherland repeatedly uses this equipment to place unwanted calls to consumers' cellular telephone numbers without first obtaining and/or verifying the prior express written

consent of the call recipients to receive such calls. Further, Sutherland fails to take the necessary measures to ensure that telemarketing calls are not placed to consumers who have their telephone numbers registered on the DNCR.

14. As a result, consumer complaints about Sutherland's calling campaigns are legion and far too numerous to quote in full. A small sample include:

- We are on the NO CALL LIST. This is a home cell number and no longer belong[s] to AARP. They still call.[1]

- Eight calls from this number in a two-hour period. *Id*.

- Calls every 30 mins and never ends have to take phone off hook just to get peace and quiet. *Id*.

- Finally answered this jerk and he is supposedly an agent for various medicare supplement insurance companies and proceeded to tell me I was being recorded and I politely told him where he could go and that my number is blocked. *Id*.

- I have received a few calls from this number in the past few weeks. They are calling on behalf of Microsoft Office Live (I signed up for the free Microsoft Live website and email service). [] I haven't called since I don't think I need to use my account and thus don't need any customer service. It was all free, so I know they are not calling because I owe them money. Its a little irritating to keep getting calls to ensure that I am happy with my service. Maybe this is some kind of scam or sales call???[2]

- The number is a listing for Sutherland Global Services, a business process outsourcing firm, located in Upstate New York (Pittsford ~ 14534). They do in-fact provide "follow-up" services AND sales add-ons for MicroSoft Live applications; as per contractual agreement with MicroSoft. You can request "No Further Contact" via phone message or via web. *Id*.

*Sutherland and Mutual of Omaha's Telemarketing Campaign*

15. Mutual of Omaha is one of Sutherland's many clients.

16. Beginning in 2011, Sutherland operated and managed a telemarketing sales

---

[1] *See* http://800notes.com/Phone.aspx/1-866-206-1937 (last accessed May 19, 2016).
[2] *See* http://800notes.com/Phone.aspx/1-585-586-5757 (last accessed May 19, 2016).

campaign to sell Omaha's Medicare supplemental insurance. For this campaign, Omaha provided the sales leads, and Sutherland placed the telemarketing calls. In placing the calls, Sutherland maintained in-house, licensed insurance brokers who were able to sell the Medicare supplemental insurance directly to the consumers that they were calling on Omaha's behalf.

17. While Sutherland placed the calls and was charged with selling the insurance policies, Omaha instructed Sutherland as to the nature and pricing of its insurance products, contributed to and approved the telemarketing scripts used by Sutherland, and authorized Sutherland to use its trade name during the telemarketing calls. At all times, Sutherland acted directly on behalf of and under the authority of Omaha, and Omaha knew or should have known of Sutherland's calling policies and practices. Defendants each shared in the revenues ensuing from their telemarketing campaigns.

18. In order to maximize their profits, Defendants placed telemarketing calls *en masse* using automated telephone dialing equipment. This equipment had the capacity to store telephone numbers to be dialed, as well as to dial from lists of telephone numbers, without human intervention. Once contact information was imported into Sutherland's internal database, Sutherland's operators needed only to scroll through a pull down menu and press a single button in order make calls.

19. Neither Sutherland nor Omaha verified that prior express written consent to receive such calls had been obtained from consumers that were to be called. Further, neither Defendant maintained any written record of consent to place such calls or took steps to scrub the telephone numbers in their calling lists against the DNCR.

20. Accordingly, Defendants used an automatic telephone dialing system to place thousands of telemarketing calls to consumers that never provided consent to receive them.

Defendants further called numerous consumers whose telephone numbers had been placed on the DNCR.

21.     As such, Defendants not only invaded the personal privacy of Plaintiff and the members of the putative Classes, but also intentionally and repeatedly violated the provisions of the TCPA.

## PLAINTIFF SUTTLES'S EXPERIENCE

22.     To avoid unwanted telemarketing calls, Plaintiff placed his cellular telephone number ending in 6767 on the DNCR in 2009.

23.     On July 22, 2014, Plaintiff received a call on his cellular telephone from the number 866-206-1937. Plaintiff did not pick up the call and Defendants subsequently left a voice message. In the message, the caller identified herself as a representative of both Sutherland and Mutual of Omaha and asked Plaintiff to return her call in order to receive more information about the purchase of Omaha's insurance products.

24.     Plaintiff had not provided his consent to be called by Defendants, was not interested in Defendants' offer, and did not return Defendants' call.

25.     The following day, on July 23, 2014, Plaintiff received another call from Defendants. Once again he did not answer. This time, Defendants' representative did not leave him a voice message.

26.     On July 25, 2014, Plaintiff received a third call from Defendants. Upon answering, he was greeted by a momentary silence before a female representative greeted him and identified herself as calling on behalf of Mutual of Omaha and Sutherland Global Services. The representative offered to compare Plaintiff's current insurance coverage with Mutual of Omaha's in an attempt to sell him Omaha's insurance product.

27.  Plaintiff was not interested in Defendants' offers and found the repetitive calls to be unwanted, disruptive, and an invasion of his personal privacy. In addition, Defendants' calls took up Plaintiff's time and temporarily seized control of his cellular telephone, which he paid a monthly fee to maintain, thereby diminishing his usage, enjoyment, and the utility of his cellular telephone plan. These unwanted calls also used up voicemail storage space and diminished his cellphone's battery life, all without his invitation or prior express written consent.

28.  At no time prior to or after this call did Plaintiff enter into a business relationship with Defendants or contact Defendants about their products. Further, he never provided Sutherland or Omaha with prior express written consent to be contacted in regard to Omaha's insurance products or in regard to any products or services whatsoever.

29.  Defendants knew that they did not have Plaintiff's prior express written consent to call him, and yet repeatedly autodialed his cellphone anyway, in willful violation of the TCPA.

## CLASS ACTION ALLEGATIONS

30.  **Class Definitions**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3) on behalf of himself, two classes, and two subclasses of similarly situated individuals (collectively, the "Classes"), defined as follows:

> **Autodial Class**: All individuals in the United States who received a telephone call made by Sutherland: (1) promoting products or services; (2) at a cellular telephone number; (3) where such call was made using a computerized telephone dialing system; and (4) where neither Sutherland nor its clients had any current record of prior express written consent to place such call at the time such call was made.
>
> **Omaha Autodial Subclass**: All members of the Autodial Class where Sutherland's calls promoted Mutual of Omaha's products or services.
>
> **Do Not Call Class**: All individuals in the United States who received more than one telephone call made by or on behalf of Sutherland within a 12-month period: (1) promoting products or services; (2) at a telephone number that had been registered with the National Do Not Call Registry for at least 30 days at the time

of each call; and (3) where neither Sutherland nor its clients had any current record of express written consent to place such calls at the times such calls were made.

**Omaha DNC Subclass**: All members of the Do Not Call Class where Sutherland's calls promoted Mutual of Omaha's products or services.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants; Defendants' subsidiaries, successors, and predecessors; any entity in which Defendants have a controlling interest; and the current or former employees, officers, and directors of Defendants or their subsidiaries, successors, predecessors, or any entity in which Defendants have a controlling interest; (3) persons who properly execute and file a timely request for exclusion from any of the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31. **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants had thousands of telephone calls placed to consumers who fall into each of the definitions of the Classes. Members of the Classes can be easily identified through Defendants' records.

32. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to, the following:

**Autodial Class and Omaha Autodial Subclass**:

    (a)    Whether Defendants' conduct violated the TCPA;

  (b)  Whether Defendants systematically made telephone calls to consumers who did not previously provide prior express written consent to receive such calls;

  (c)  Whether Defendants' calls were made to consumers' cellular telephones utilizing an automatic telephone dialing system; and

  (d)  Whether Plaintiff and the members of the Autodial Class and the Omaha Autodial Subclass are entitled to treble damages based on the willfulness of Defendants' conduct.

**The Do Not Call Class and Omaha DNC Subclass**:

  (a)  Whether Defendants' conduct violated the TCPA;

  (b)  Whether Defendants systematically made telephone calls to consumers who did not previously provide Defendants with prior express consent to receive such calls;

  (c)  Whether Defendants made more than one telephone call within a 12-month period to consumers whose telephone numbers were registered with the National Do Not Call Registry for at least thirty days, at the time of each call; and

  (d)  Whether Plaintiff and members of the Do Not Call Class and the Omaha DNC Subclass are entitled to treble damages based on the willfulness of Defendants' conduct.

33. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendants' uniform wrongful conduct toward Plaintiff and the Classes.

34. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and he has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

35. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of all the Classes and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendants' practices challenged herein apply to and affect each of the members of each of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to each of the Classes as a whole, not on facts or law applicable only to Plaintiff.

36. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of each of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of each of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
## Violation of 47 U.S.C. § 227
### (On Behalf of Plaintiff, the Do Not Call Class, and the Omaha DNC Subclass)

37.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

38.     47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

39.     The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." *See* 47 C.F.R. § 64.1200(c).

40.     47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

11

41. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to

receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

42. Defendants and/or their agents made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Class and Omaha DNC Subclass within a 12-month period to promote goods or services while lacking prior express written consent to place such calls. Each such call was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days. Plaintiff and members of the Do Not Call Class and Omaha DNC Subclass never provided any form of consent to receive telephone calls from Defendants or their agents and/or neither Defendants nor their agents have any record of consent to place telemarketing calls to them.

43. Defendants violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls to be initiated for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Do Not Call Class and Omaha DNC Subclass, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls.

44. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the members of the Do Not Call Class and Omaha DNC Subclass received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the members of the Do Not Call Class and Omaha DNC Subclass received the type of unwanted and harassing calls that they were expressly trying to avoid, and suffered invasions of privacy, violations of their statutory rights, and actual damages in the forms of wear and tear on their telephone equipment and the diminished use, enjoyment, value, and utility of their telephone equipment and plans.

45. Accordingly, under section 47 U.S.C. § 227(c), Plaintiff and the members of the

Do Not Call Class and Omaha DNC Subclass are each entitled to, *inter alia*, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

46. To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the Do Not Call Class and Omaha DNC Subclass.

## SECOND CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
**(On behalf of Plaintiff, the Autodial Class, and the Omaha Autodial Subclass)**

47. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48. Defendants and/or their agents made unsolicited and unwanted telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Autodial Class and the Omaha Autodial Subclass without their prior express written consent.

49. Defendants placed these telephone calls using telephone dialing equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse,* without human intervention.

50. By placing unsolicited telephone calls to the cellular telephones of Plaintiff and the members of the Autodial Class and the Omaha Autodial Subclass without prior express written consent, and by using equipment with the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or to receive and store lists of phone numbers, and to dial such numbers, *en masse*, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

51. As a result of Defendants' unlawful conduct, Plaintiff and the members of the Autodial Class and the Omaha Autodial Subclass received unwanted and intrusive telephone calls, and suffered invasions of privacy, violations of their statutory rights, and actual damages in the

forms of wear and tear on their telephone equipment; consumed battery life; diminished use, enjoyment, value, and utility of their cellular telephone plans; and, in some cases, the loss of cellular minutes.

52.     Accordingly, under 47 U.S.C. § 227(b)(3)(B), Plaintiff and the other members of the Autodial Class and the Omaha Autodial Subclass are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

53.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodial Class and the Omaha Autodial Subclass.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff John Colin Suttles, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying each of the Classes as defined above, appointing Plaintiff John Colin Suttles as representative of each of the Classes, and appointing his counsel as Class Counsel;

B.     An order declaring that Defendants' actions, as set out above, willfully violate 47 U.S.C. § 227;

C.     An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.     An award of actual and statutory damages;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Dated: May 25, 2016

    Respectfully submitted,

    **JOHN COLIN SUTTLES**, individually and on behalf of all others similarly situated,

    */s/ W. Craft Hughes*
    W. Craft Hughes
    Texas Bar No. 24046123
    Admitted in the WDNY (2011)
    craft@hughesellzey.com
    Jarrett L. Ellzey
    Texas Bar No. 24040864
    jarrett@hughesellzey.com
    HUGHES ELLZEY, LLP
    2700 Post Oak Blvd., Suite 1120
    Houston, TX 77056
    Phone (713) 554-2377
    Fax (888) 995-3335

    ATTORNEYS FOR PLAINTIFF
    AND THE PUTATIVE CLASS